Marcus G-. Christ, J.
Application for an order pursuant to article 78 of the Civil Practice Act reviewing and annulling a determination of the respondent, Temporary State Housing Bent Commission.
The petitioners are tenants of an apartment house located at 29 Woodmere Boulevard, Woodmere, New York. Their landlord’s agent, the Investors Funding Corporation of New York, applied for an increase in the maximum rent under subdivision 5 of section 33 of the State Bent and Eviction Begulations — the 6% net annual return formula. Following proceedings before the local rent administrator an increase of 15% in the maximum rents of the petitioners was granted on February 15, 1957. After timely protest to the State Bent Administrator, the order of the local official was upheld on June 12,1957.
It is the contention of the petitioners that error was committed by the local and State Bent Administrators in (1) computing the expenses of the landlord, (2) denying the tenants an inspection of the landlord’s books, (3) and in failing to examine the records of the previous owner of the property for the three-year period prior to the one-year test period submitted by the landlord.
The Legislature has provided that upon review by the court of a determination by an official of the Bent Commission the court may not interfere with the determination “ unless the petitioner shall establish * * * ‘ that the regulation or order is not in accordance with law, or is arbitrary or capricious ’ ’ (State Besidential Bent Law, § 9, subd. 2; L. 1946, ch. 274, as amd. by L. 1957, ch. 755).
Examining the specific objections of the petitioners none are found which warrant a conclusion of arbitrary or unreasonable conduct by the respondent officials.
First, it is urged that the subject property is overinsured and therefore the premiums paid for insurance should not have been allowed as an expense to the full extent. It has been held *840 that the expense of alleged overinsurance may he reasonably allowed where the sum was actually paid and the landlord was required by the mortgagee (as here) to insure the building for its replacement value rather than its assessed valuation (Matter of McArthur v. Abrams, 141 N. Y. S. 2d 662).
Second, it is contended that ‘£ the amounts allowed to the landlord for leasing fees to the agent for leases to tenants already in occupancy were not justified ”. The petition does not contain a factual statement showing what fees were allowed for new leases to present occupants. In the supporting affidavit of the petitioners’ attorney, reference is made to Schedule H attached to the return. Schedule H shows on examination that ££ additional leasing commissions earned for the execution of leases for apartments 3B, 4D, 1H, 3H, 1J, 3J, and the basement are not considered since the additional expense would have no effect on the grant which exceeds 15% both at audit and at protest.” The respondent contends (pp. 4, 5 of order of June 12, 1957) that ££ leasing commissions, whether paid for leases with new tenants or tenant already in occupancy are valid operating expenses under Section 33(5) ”. The landlord’s agent, an intervenor-respondent, contends that the allowance of such commissions is within the rates established by the Nassau County Beal Estate Board whereas the petitioners contend to the contrary. Be that as it may, it will not be held unreasonable for the respondent to consider said expense.
Third, it is urged by the petitioners, that the allowance ££ to the landlord for repairs and maintenance were excessive and that the custom of using an average of four years’ repairs should have been followed instead of basing it on a one years’ record of repairs ”. It appears that the only records in possession of the landlord, those for the test year of 1955 and for the year following (during which this proceeding was pending), were considered. It was not unreasonable for the respondent to refuse to subpoena the production of records allegedly held by a former owner of the premises. Moreover, it appears that the respondent did not allow the full extent of the repair expense ($19,333.57) but followed its £< Manual of Internal Procedure ” (§ 33.4 G.— Bepairs and Maintenance, rev. Sept., 1955) in allowing the 21% ($11,097.65) of the rental income for the test year. The percentage allowed by the manual for premises outside of New York City is based upon a study of hardship applications conducted by the respondent. The use of the percentage provided by the manual for New York City properties was held to he reasonable in Matter of London v. Weaver (N. Y. L. J., April 30, 1957, p. 6, col. 7 by Mr. Justice *841 Hbcht). This court likewise holds that the respondent was reasonable in using the percentage stated in its manual.
Fourth, the petitioners urge that it was unreasonable for the respondent to deny them the right to examine the landlord’s books. In a rent proceeding before the commission ‘ ‘ tenants are not permitted to examine the landlord’s records ” (Matter of Mathieu v. Abrams, 286 App. Div. 234, 235). As stated in Matter of Mouakad v. Ross (274 App. Div. 74, 76): “ The commission was created to at once protect the tenants’ interests, afford the landlord necessary relief, and avoid an adversary proceeding between the landlord and tenants. The commission has a staff of lawyers, accountants and investigators, presumably adequate for the purpose, and so long as it acts within the law and in a reasonable way its authority and action should be accepted”. An examination of the voluminous return reveals that an exhaustive audit was made by the respondent’s employees. No contention is made that an opportunity was denied the petitioners to interrogate the auditors as to their work and therefore unlike Matter of Mathieu (supra) a remission of the matter will not be made. In addition to the above stated reasons for denying the application it does not appear that an increase in rent was improper.
The audit made by the respondent reveals that the landlord was entitled to a net annual return of $17,250, whereas only $4,679.36 was received during the test year. The difference of $12,840.64 is slightly more than 23% of the rental income but as an increase in rent for any controlled apartment may not exceed 15%, the landlord was not awarded an increase which would provide a 6% annual return. Therefore, unless an error of some magnitude were made in the computations or allowances, the landlord would still be entitled to the increase. The papers submitted reveal no facts to sustain the conclusion that an error which would affect the result has been committed.
Accordingly, the application is denied.
Settle order on notice.